IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YVONNE PERRY, | : |
| *Plaintiff*, | : |
| v. | : Case No.: 5:25-cv-6497 |
| DOLLAR TREE, INC. d/b/a DOLLAR TREE STORES, | : |
| | : **JURY TRIAL DEMANDED.** |
| *Defendant*. | : |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Yvonne Perry, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who files the within Complaint in Civil Action against Defendant, Dollar Tree, Inc. d/b/a Dollar Tree Stores, of which the following is a statement:

**PARTIES**

1. Plaintiff, Yvonne Perry ("Plaintiff" or "Ms. Perry"), is an adult individual who currently resides in Lancaster County, Pennsylvania.

2. Defendant, Dollar Tree, Inc., is a foreign business corporation with a principal address of 500 Volvo Parkway, Chesapeake, VA 23320. At all times relevant, Dollar Tree, Inc. conducted business and operated under the name Dollar Tree Stores (hereinafter "Defendant") with business locations throughout the Commonwealth of Pennsylvania, including the store where Ms. Perry was employed.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Ms. Perry brings this Complaint in Civil Action under the Americans with Disabilities Act ("ADA" – 42 U.S.C §§ 12101, *et seq*.), as amended, and the Family and Medical Leave Act of 1993 ("FMLA" – 29 U.S.C. § 2601 *et seq.*).

4. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the district in which the claims arose.

5. On August 11, 2025, Ms. Perry timely dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

6. On September 2, 2025, the EEOC issued a Notice of Right to Sue.

7. Ms. Perry has exhausted all of her administrative remedies under the ADA.

8. Ms. Perry intends to amend her Complaint once her claims under the PHRA are administratively discharged on or around August 11, 2026.

## FACTUAL ALLEGATIONS

9. On or about October 31, 2022, Ms. Perry commenced her employment with Defendant as an Assistant Manager at its Willow Street, Pennsylvania location.

10. Ms. Perry was fully qualified for her position and consistently performed her job duties satisfactorily.

11. Ms. Perry is associated with an individual with disabilities in that her son suffers from serious heart conditions and related medical complications.

12. His conditions require ongoing care, including regular medical appointments, specialist treatment, and surgical interventions.

13. Ms. Perry is her son's primary caregiver and responsible for transporting him to and from appointments, coordinating treatment, and managing his recovery.

14. Defendant was fully aware that Ms. Perry had an association with a disabled individual. Throughout her employment, she disclosed her son's medical needs and submitted medical documentation in support of absences taken for his care.

15. In or around November 2024, Ms. Perry had been scheduled to undergo a partial hysterectomy but voluntarily cancelled the procedure to avoid placing scheduling burdens on the store during a high-volume period.

16. Shortly after the holiday season, Defendant reduced Ms. Perry's hours and promoted another employee without offering Ms. Perry the opportunity to apply.

17. When Ms. Perry inquired about the promotion and hour reduction, District Manager Mike Higgins ("Mr. Higgins") told her that she had attendance issues, despite the fact her absences were medically documented and related to her son's care.

    a. **Defendant discriminated against Ms. Perry due to her son's disabilities.**

18. Ms. Perry's son was scheduled for surgery on February 4, 2025. She requested and received approval from her direct supervisor, Amanda Strother ("Ms. Strother"), to take February 4 and 5 off.

19. On February 3, 2025, Ms. Perry's son's prep-operative appointment resulted in medical complications, and the surgery was postponed.

20. Ms. Perry called off work the same day due to the complications, and she returned to work on February 6, 2025, volunteering to work her regularly scheduled weekend shift.

    b. **Defendant interfered with Ms. Perry's request for protected leave.**

21. On February 10, 2025, Ms. Perry called Mr. Higgins to request time off for the rescheduled surgery, now set for February 13, 2025.

22. Ms. Perry requested to use two (2) personal time off ("PTO") days from her remaining bank of 32 hours.

23. Mr. Higgins responded with hostility, repeatedly questioning the age of Ms. Perry's son and insisted she should have provided a two weeks' notice and accused her of violating policy by not doing so.

24. Ms. Perry explained that the surgery had been rescheduled unexpectedly and that she could not provide earlier notice. She also reminded Mr. Higgins that she was her son's primary caregiver and that the surgery was medically urgent.

25. Rather than approve the time or offer alternatives, Mr. Higgins claimed he would consult with Human Resources but never followed up.

26. Defendant failed to provide notice of FMLA eligibility or to engage in meaningful dialogue about her request for time off.

27. Therefore, Ms. Perry was left in limbo and unsure if she would be permitted to care for her son.

    c. **<u>Defendant terminated Ms. Perry following her protected activity.</u>**

28. On February 11, 2025, Ms. Perry formally applied for Family and Medical Leave Act ("FMLA") leave in connection with her son's upcoming surgery.

29. Later that same day, Ms. Perry reported to work as usual.

30. However, she was pulled aside by Ms. Strother and told that Mr. Higgins had called and directed that she [Ms. Perry] be terminated immediately.

31. Ms. Perry was given no reason for her termination, and Ms. Strother confirmed that Mr. Higgins did not offer one.

32. Defendant offered no explanation or justification for Ms. Perry's termination. No warnings were issued, and no misconduct occurred.

33. It is important to note that the termination came one day after she requested leave and the same day she applied for FMLA leave.

34. Defendant's decision to terminate Ms. Perry, despite approving earlier leave, receiving her documentation, and knowing of her son's surgery, demonstrates a pretextual motive.

35. Upon information and belief, similarly situated employees who were not associated with disabled individuals, including employees with similar or worse attendance records, were neither disciplined nor terminated.

## COUNT I
## ASSOCIATIONAL DISABILITY DISCRIMINATION
## IN VIOLATION OF THE ADA

36. Ms. Perry incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

37. The ADA's "association provision" protects qualified individuals from employment discrimination based on the "known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

38. In order to establish a prima facie case for discrimination by association under ADA, a Plaintiff must prove that: (1) she was qualified at the time of the adverse employment action, (2) she was subject to an adverse employment action, (3) at the time of the adverse employment action, the claimant was known by her employer to have a relative or an associate with a disability, and (4) the adverse employment action occurred under circumstances raising a

reasonable inference that the disability of the relative or associate was a determining factor in the termination decision. *Pollere v. USIG Pa., Inc.*, 136 F.Supp.3d 680, 685, No. 15–2421, 2015 WL 9260053, at *3 (E.D. Pa. Dec. 18, 2015) (citing *Barthalow v. David H. Martin Excavating, Inc.*, No. 5–2593, 2007 WL 2207897, at *3 (M.D. Pa. July 30. 2007)).

39. Ms. Perry was an employee of Defendant within the meaning of the ADA.

40. Defendant was an employer within the meaning of the ADA.

41. Ms. Perry was a qualified individual capable of performing the essential functions of her job.

42. Defendant was aware of Ms. Perry's association with an individual with a disability—her son—and knew she was his primary caregiver. Throughout her employment, Ms. Perry disclosed her son's serious medical conditions and provided documentation supporting her need to care for him.

43. Despite this knowledge, Defendant disciplined Ms. Perry for medically supported absences, denied her advancement opportunities, and ultimately terminated her employment shortly after she requested leave for her son's surgery.

44. The adverse actions taken against Ms. Perry, including reduced hours, denied promotion, and termination, occurred under circumstances raising a reasonable inference that her association with her disabled son was a determining factor in Defendant's decision-making.

45. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience such that punitive damages are warranted.

46. As a direct and proximate cause of the aforementioned conduct, Ms. Perry suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Yvonne Perry, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including backpay, front pay, compensatory damages, punitive damages, injunctive relief, costs and attorney fees, in addition to such other relief as deemed just and proper.

## COUNT II
## RETALIATION
## IN VIOLATION OF THE ADA

47. Ms. Perry incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

48. To establish a *prima facie* case of retaliation under the ADA, a Plaintiff must show: (1) she engaged in protected activity; (2) the employer took an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 F. App'x 41, 49–50 (3d Cir. 2017).

49. "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 307 (3d Cir.2012) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3rd Cir. 2007)).

50. Ms. Perry engaged in protected activity under the ADA when she disclosed her association with a disabled individual, provided documentation for medically necessary absences, and requested leave to care for her son's serious medical conditions.

51. Defendant was aware of Ms. Perry's protected activity and responded with escalating adverse actions, including hostility toward her leave requests, refusal to approve PTO, and, ultimately, termination.

52. The timing of Ms. Perry's termination—occurring just one day after requesting time off and the same day she submitted a leave request—supports a strong inference of retaliatory intent.

53. Defendant offered no legitimate justification for Ms. Perry's termination and failed to engage in any process to evaluate her leave request, instead treating her caregiving obligations as misconduct.

54. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience such that punitive damages are warranted.

55. As a direct and proximate cause of the aforementioned conduct, Ms. Perry suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Yvonne Perry, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including backpay, front pay, compensatory damages, punitive damages, injunctive relief, costs and attorney fees, in addition to such other relief as deemed just and proper.

## COUNT III
## FMLA INTERFERENCE

56. Ms. Perry incorporates the allegations contained in the paragraphs above as if fully set forth herein.

57. The FMLA provides in pertinent part, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights, violation of which is known as FMLA interference. *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (citing to 29 U.S.C. § 2615(a)(1)).

58. The Department of Labor defines an "employer" under the FMLA as including "any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency." 29 C.F.R. § 825.104(a).

59. In order to demonstrate a claim for FMLA interference, Ms. Perry must establish: (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citing *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); *see also*, *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

60. Moreover, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3rd Cir. 2012).

61. Under this regulatory interpretation, employers are barred from considering an employee's FMLA leave "as a negative factor in employment actions such as hiring, promotions, or disciplinary actions." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

62. Defendants are qualified employers under the FMLA.

63. Ms. Perry was entitled to and applied for leave pursuant to the FMLA.

64. On the same day Ms. Perry applied for FMLA leave, she was informed of her termination.

65. Defendant's termination of Ms. Perry on the same day as she submitted her FMLA leave request is in direct violation of her right to protected medical leave under the FMLA.

9

66. Thus, Defendants interfered with Ms. Perry's rights to protected medical leave under the FMLA.

67. As a direct and proximate cause of the aforementioned conduct, Ms. Perry suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Yvonne Perry, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including backpay, front pay, liquidated damages, injunctive relief, costs and attorney fees, in addition to such other relief as deemed just and proper.

## COUNT IV
## FMLA RETALIATION

68. Ms. Perry incorporates the allegations contained in the paragraphs above as if fully set forth herein.

69. To prevail on a claim of FMLA retaliation, Ms. Perry must prove that "(1) she invoked her right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 2012 WL 3140350 at *6 (3d Cir. Aug. 3, 2012).

70. "To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave . . . the employee 'need not expressly assert rights under the FMLA or even mention the FMLA.'" *Id.* at *7 (quoting 29 C.F.R. § 825.303(b)).

71. On February 11, 2025, Ms. Perry submitted a formal request for FMLA leave.

72. However, the very day Ms. Perry submitted her request, Defendant terminated her employment and refused to provide Ms. Perry with a reason for her termination.

73. Defendant's termination of Ms. Perry was retaliation for her February 11, 2025 request to use FMLA leave.

74. As a direct and proximate cause of the aforementioned conduct, Ms. Perry suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Yvonne Perry, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including backpay, front pay, liquidated damages, injunctive relief, costs and attorney fees, in addition to such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

Pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Yvonne Perry, hereby demands a trial by jury on all issues of fact and claims for legal relief so triable as of right. Plaintiff acknowledges that certain issues, including equitable remedies such as back pay, front pay, and injunctive relief, may be determined by the Court consistent with *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311 (3d Cir. 2006) and applicable law. Plaintiff respectfully requests that a jury be empaneled to determine all factual and legal issues properly within its province, including liability, compensatory damages, and punitive damages, and that the Court determine equitable relief as appropriate.

                                                    Respectfully submitted,

                                                    **J.P. WARD & ASSOCIATES, LLC**

Date: November 18, 2025                        By: */s/ Justin M. Bahorich*
                                                          Justin M. Bahorich, Esq.
                                                          Pa. I.D. No. 329207
                                                          J.P. Ward & Associates, LLC
                                                          The Rubicon Building
                                                          201 South Highland Avenue
                                                          Suite 201
                                                          Pittsburgh, PA 15206
                                                          jbahorich@jpward.com

                                                          *Counsel for Plaintiff*